UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal Action No. 10-256-19 (RMC) |
| | ) |
| HENRY DIAZ-ANTUNUEZ, | ) |
| | ) |
| Defendant. | ) |

## OPINION

Defendant Henry Diaz-Antunuez is one of nineteen persons charged in this case with offenses related to the gang MS-13. He moves to dismiss the federal court indictment as it relates to him. The lengthy Superseding Indictment charges other Defendants with crimes under federal law, such as conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act, and crimes under District of Columbia law, such as robbery, kidnapping, murder, and burglary. Mr. Diaz-Antunuez is charged with no federal offense and only one D.C. Code offense, first-degree murder while armed, which he allegedly committed at the age of sixteen. Mr. Diaz-Antunuez protests that the government should have treated him as a juvenile, as it concededly must when a person under age eighteen is charged with a federal offense. The Court held oral argument on Mr. Diaz-Antunuez's motion on March 12, 2013 and denied it from the bench, concluding that federal law and the D.C. Code permit Mr. Diaz-Antunuez to be tried as an adult in federal court, based on an alleged D.C. Code violation for which the District of Columbia would treat him as an adult if he were prosecuted in D.C. Superior Court. This opinion provides the underlying analysis should there be an appeal.

## I. FACTS

### A. Background of Charges

Mr. Diaz-Antunuez was born on September 24, 1992. He was sixteen years old when the alleged murder occurred on November 6, 2008 and nineteen years old when arrested on November 3, 2011. He is twenty years old at present.

Mr. Diaz-Antunuez is Defendant number nineteen in *United States v. Silva*, Criminal No. 10-256 (RMC), in which he and eighteen other alleged members of the gang MS-13 (La Mara Salvatrucha) are charged with gang-related offenses. The United States alleged that eighteen of the Defendants were involved in a conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68, that began "at least" as early as "the late 1990s" and that continues to the present. Superseding Indictment [Dkt. 101] ¶ 16. Mr. Diaz-Antunuez is not charged with any federal crime, under RICO or otherwise. He is scheduled to go to trial in June 2013 with two co-defendants, Noe Machado-Erazo (Defendant number eight) and Jose Martinez-Amaya (Defendant number nine), who are charged with conspiracy to violate RICO ("RICO conspiracy").

> The government describes MS-13 as follows:
>
> *La Mara Salvatrucha*, also known as the MS-13 gang (hereafter "MS-13"), is a gang composed primarily of immigrants or descendants of immigrants from El Salvador, with members operating throughout the United States, including within the District of Columbia. The name "*Mara Salvatrucha*" is a combination of several slang terms. The word "*Mara*" is the term used in El Salvador for "gang." The phrase "*Salvatrucha*" is a combination of the words "*Salva*," which is an abbreviation for "Salvadoran," and "*trucha*," which is a slang term for the warning "fear us," "look out," or "heads up."
>
> . . .
>
> MS-13 is a national and international criminal organization with over 10,000 members regularly conducting gang activities in at

>least twenty states and the District of Columbia, as well as in Mexico, Honduras, Guatemala, and El Salvador. MS-13 is one of the largest street gangs in the United States. Gang members actively recruit members, including juveniles, from communities with a large number of immigrants from El Salvador. Members, however, can also have ethnic heritage from other Central American countries. In the United States, MS-13 has been functioning since at least the 1980s.
>
>. . .
>
>[M]embers of MS-13 were expected to protect the name, reputation, and status of the gang from rival gang members and other persons. MS-13 members required that all individuals should show respect and deference to the gang and its membership. To protect the gang and to enhance its reputation, MS-13 members were expected to use any means necessary to force respect from those who show disrespect, including acts of intimidation and violence. MS-13's creed is exemplified by one of its mottos, "Matar, robar, violar, controlar," which translates in sum and substance to, "Kill, steal, rape, control."
>
>. . .
>
>MS-13 members were required to commit acts of violence to maintain membership and discipline within the gang, including violence against rival gang members or those they perceived to be rival gang members, as well as MS-13 members and associates who violated the gang's rules. As a result of MS-13's frequent use of violence, innocent persons were often injured or killed. Participation in criminal activity by an MS-13 member, particularly violent acts directed at rival gang members or as ordered by the gang leadership, increased the level of respect accorded that member, resulting in that member maintaining or increasing his position in the gang, and possibly resulting in recognition as a leader

*Id.* ¶¶ 1, 3, 6, 7.

Mr. Diaz-Antunuez was not named in the original Indictment, filed in September 2010. *See* [Dkt. 1]. He is charged only in Count 28 of the Superseding Indictment, with first-degree murder while armed in violation of D.C. Code §§ 22-2101, 4502. Messrs. Machado-Erazo and Martinez-Amaya are both charged in only one count of the Superseding Indictment,

3

Count 1, which alleges RICO conspiracy in violation of 18 U.S.C. § 1962(d).[1] *See* Superseding Indictment ¶ 16. They are not charged in Count 28. However, Count 28 did charge Dennis Gil-Bernardez, Defendant number fifteen, with first-degree murder while armed. Mr. Gil-Bernardez has since pled guilty to RICO conspiracy, but his plea agreement included dismissal of Count 28 against him.

> Count 28 states as follows:
>
> DENNIS L. GIL-BERNARDEZ, also known as Pando, also known as Dopre, HENRY DIAZ-ANTUNUEZ, also known as Stewie, also known as Stuvi, and other individuals whose identity is known to the Grand Jury, within the District of Columbia, while armed with a dangerous weapon, that is a knife or other sharp object, purposely and with deliberate and premeditated malice, killed Louis Alberto Membreno-Zelaya, also known as "El Brujo", by stabbing him with a knife or other sharp object on or about November 6, 2008, thereby causing injuries from which Louis Alberto Membreno-Zelaya, also known as "El Brujo" died on or about November 6, 2008. (First Degree Murder While Armed (Premeditated), in violation of 22 D.C. Code, Sections 2101, 4502 (2007 ed.)).

Superseding Indictment at 37–38. D.C. Code § 22-2101 is the substantive offense of first-degree murder; it provides that "[w]hoever, being of sound memory and discretion, kills another purposely, either of deliberate and premeditated malice . . . is guilty of murder in the first degree." Section 22-4502 contains sentencing enhancements for commission of violent crimes, including murder, while armed; its effect here will depend on the extent of Mr. Diaz-Antunuez's prior criminal record, if he is convicted.[2] Mr. Diaz-Antunuez faces a mandatory-minimum

---

[1] During a motions hearing on March 12, 2013, the government advised the Court that it may file a Second Superseding Indictment adding charges of a violation of 18 U.S.C. § 1959(a)(1), Violent Crime in Aid of Racketeering ("VICAR") against Messrs. Machado-Erazo and Martinez-Amaya. As of the filing of this Opinion, it had not done so.

[2] Defendants charged in federal court with D.C. Code offenses are sentenced pursuant to the D.C. Voluntary Sentencing Guidelines, not the United States Sentencing Guidelines. *United*

sentence of thirty years of imprisonment under the D.C. Code if found guilty.[3] *See id.* §§ 22-2101, 22-2104, 22-4502.

The murder of Mr. Membreno-Zelaya is alleged to have been an overt act in aid of the RICO conspiracy. Superseding Indictment ¶ 22(i), (j) ("Overt Acts"). The Superseding Indictment also gives further background as to the Membreno-Zelaya slaying:

> Between on or about the summer of 2008 through November 6, 2008, from a jail in El Salvador, MOISES HUMBERTO RIVERA-LUNA, also known as Santos, also known as Viejo Santos, issued and conveyed through DENNIS L. GIL-BERNARDEZ also known as Pando, also known as Dopre, a greenlight which ordered the murder of Louis Alberto Membreno-Zelaya, also known as "El Brujo." GIL-BERNARDEZ subsequently ordered the greenlight to cliques in the Washington, D.C. metropolitan area.
> . . .
> On or about November 6, 2008, in the District of Columbia persons whose identity is known to the Grand Jury stabbed and killed Louis Alberto Membreno-Zelaya, also known as "El Brujo" in accordance with the greenlight which had been issued by RIVERA-LUNA and GIL-BERNARDEZ.

*Id.*

Charged with the Membreno-Zelaya murder along with Mr. Diaz-Antunuez, Mr. Gil-Bernardez entered a guilty plea under Federal Rule of Criminal Procedure 11(c)(1)(C) on December 7, 2012. He pled guilty to Count 1, RICO conspiracy, and admitted guilt as to: attempted murder in the District of Columbia (as to Dimas Perez, on April 7, 2008); murder in

---

*States v. Cutchin*, 956 F.2d 1216, 1219 (D.C. Cir. 1992) ("Defendants found guilty of violations of the D.C. Code can only be sentenced under the D.C. Code.").

[3] Ordinarily, the maximum statutory penalty for first-degree murder while armed is life imprisonment without release. *See* D.C. Code §§ 22-2104(a), 22-4502; *see also* District of Columbia Sentencing and Criminal Code Revision Commission, Voluntary Sentencing Guidelines Manual, at C-15. Because Mr. Diaz-Antunuez was under eighteen at the time of the offense, he cannot be sentenced to life imprisonment without release. *See* D.C. Code § 22-2104(a) ("[N]o person who was less than 18 years of age at the time the murder was committed shall be sentenced to life imprisonment without release.").

Maryland (as to Luis Chavez-Ponce, on July 29, 2008); and attempted murder in Virginia (as to three unknown persons, on October 6, 2008). *See* Plea Agr. [Dkt. 272], Factual Proffer [Dkt. 273]. He also admitted speaking to a "member of MS-13 who was incarcerated in El Salvador" during a meeting of the MS-13 Normandie clique and announcing a "green-light" on Mr. Membreno-Zelaya. Factual Proffer ¶ 21. Mr. Gil-Bernardez "appointed certain MS-13 members" to look for Mr. Membreno-Zelaya and advised other cliques of the green light. *Id.* According to Mr. Gil-Bernardez's Factual Proffer, MS-13 members then stabbed Mr. Membreno-Zelaya to death on November 6, 2008. *Id.*

The Court accepted the plea agreement and imposed a sentence of seventy-six years (912 months), to run concurrent with a sentence imposed on Mr. Gil-Bernardez by the United States District Court for the Eastern District of Virginia for other crimes that were charged in that case, Criminal No. 1:09-cr-216 (E.D. Va. filed May 6, 2009). *See* Judgment [Dkt. 278].

Thus, the current state of affairs for Mr. Diaz-Antunuez is as follows. He faces trial in federal court on a D.C. Code violation for a murder that is an alleged overt act of a RICO conspiracy with which he is not charged but with which two co-defendants are charged, while his co-defendant on the D.C. Code murder charge—who was also charged with RICO conspiracy, in violation of federal law—is no longer in the case.

### B. Procedural History as to Mr. Diaz-Antunuez

The government named Mr. Diaz-Antunuez as a Defendant in this case in the Superseding Indictment filed on November 1, 2011. He was arrested on November 3, 2011, and has been held ever since. After difficulties arose between Mr. Diaz-Antunuez and his first appointed counsel, the Court appointed Manuel Retureta to represent Mr. Diaz-Antunuez. Mr.

Retureta filed his appearance on January 3, 2013, *see* Dkt. 277, and he filed the instant Motion to Dismiss the Indictment on February 19, 2013, *see* Def. Mot., Dkt. 295. The government opposed the motion, *see* Dkt. 297, and Mr. Diaz-Antunuez filed a reply brief, *see* Dkt. 299. Oral argument on the motion was scheduled for March 6, 2013, and was rescheduled to March 12, 2013, due to inclement weather that closed the courthouse.

## II. LEGAL STANDARD

"[A]t any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense." Fed. R. Crim. P. 12(b)(3)(B). In ruling on a motion to dismiss, a court views the indictment as a whole and assumes its factual allegations to be true. *Boyce Motor Lines v. United States*, 342 U.S. 337, 343 n.16 (1952); *see also United States v. Ferris*, 807 F.2d 269, 271 (1st Cir. 1986). The question is usually whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed. *United States v. Sampson*, 371 U.S. 75, 76 (1962).

## III. ANALYSIS

Mr. Diaz-Antunuez argues that the Superseding Indictment must be dismissed as to him for two reasons: (1) he should have been treated as a juvenile under the Federal Juvenile Delinquency Act ("FJDA"), 18 U.S.C. § 5301 *et seq.*; and (2) the Court either lacks or should decline jurisdiction over the only offense with which he is charged, a D.C. Code offense. *See* Def. Mot. at 4. As set forth below, the Court concludes that the FJDA does not apply because Mr. Diaz-Antunuez is not charged with a federal offense. Because joinder of Mr. Diaz-Antunuez in the Superseding Indictment was proper under Federal Rule of Criminal Procedure 8(b), the Court has jurisdiction over him under D.C. Code § 11-502(3). Finally, the present record shows no prejudice to Mr. Diaz-Antunuez from a joint trial with Messrs. Machado-Erazo and Martinez-Amaya, and the Court thus declines to exercise its discretion to relinquish its jurisdiction.

### A. The FJDA Does Not Apply

Mr. Diaz-Antunuez was sixteen years old at the time of the alleged murder. He relies on his youth to argue that the government was required to comply with the FJDA before prosecuting him in federal court. *See* Def. Mot. 4–7. The FJDA gives a federal court jurisdiction over juveniles—ordinarily prosecuted in state courts—only after satisfaction of a number of prerequisites, and it requires the federal court to follow certain procedures to account for the unique nature of such cases. *See United States v. Thomas*, 114 F.3d 228, 263 (D.C. Cir. 1997) (noting that alleged juvenile delinquents "receive special rights and immunities, are shielded from publicity, are confined apart from adult criminals and are protected from certain consequences of adult conviction"). The FJDA defines a "juvenile" as a person who has not yet attained his eighteenth birthday. *See* 18 U.S.C. § 5031. For prosecutions affected by the strictures of the FJDA, a federal court's subject matter jurisdiction depends upon the government's compliance with the statute, including, *inter alia*, a certification by the Attorney General pursuant to 18 U.S.C. § 5032. *In re Sealed Case (Juvenile Transfer)*, 131 F.3d 208, 211 (D.C. Cir. 1997) (noting that certification by the Attorney General has been "uniformly treated . . . as jurisdictional" by federal circuit courts of appeals). Mr. Diaz-Antunuez asserts that the government did not comply with the FJDA, including by proceeding against him as an adult without Attorney General certification. Def. Mot. at 7–8. He contends that "the government has proceeded . . . with full knowledge that he is a juvenile and in blatant disregard of the safeguards and requirements mandated by [the FJDA]." Def. Mot. at 8.

The government responds that federal jurisdiction does not depend on the FJDA but, rather, exclusively on D.C. Code § 11-502(3), which grants concurrent jurisdiction to federal and District of Columbia courts in certain circumstances. Opp. at 1–5. Under this view of the law, the government had no obligation to comply with the FJDA because that statute applies only

when a juvenile is charged with "violation of a law *of the United States*" prior to the age of eighteen. *See* 18 U.S.C. § 5031 (emphasis added). The government relies on D.C. Code § 11-502(3), which provides: "In addition to its jurisdiction as a United States district court . . . the United States District Court for the District of Columbia has jurisdiction of . . . [a]ny offense under any law applicable exclusively to the District of Columbia which offense is joined in the same information or indictment with any Federal offense." Furthermore, the government notes that Mr. Diaz-Antunuez would not be treated as a juvenile if prosecuted in D.C. Superior Court because he was sixteen at the time of the alleged offense. *See* Opp. at 1–5 (citing D.C. Code § 16-2302(a)).

Mr. Diaz-Antunuez correctly notes that the D.C. Code and FJDA differ as to the age at which juvenile delinquents are treated as adults, but the Court finds that the statutory provisions are clear. The FJDA does not apply to this case because it speaks only to instances in which the government alleges a "violation of *a law of the United States* committed by a person prior to his eighteenth birthday which would have been a crime if committed by an adult." 18 U.S.C. § 5031 (emphasis added). Mr. Diaz-Antunuez is not charged with violating a "law of the United States;" he is charged with violating a law of the District of Columbia. D.C. Code § 11-502(3) allows this Court to preside over proceedings involving an "offense under [ ] law applicable exclusively to the District of Columbia," which clearly includes an alleged violation of D.C. Code §§ 22-2101, 22-4502. Notably, Mr. Diaz-Antunuez would be treated as an adult by the Superior Court. *See* D.C. Code §§ 16-2301(3)(A)(i), 16-2302(a) (giving the Superior Court Family Division jurisdiction over alleged offenses by a "child" but stating that "'child' does not include an individual who is sixteen years of age or older and charged by the United States attorney with murder . . . ."); *see also In re D.H.*, 666 A.2d 462, 478 (D.C. 1995) ("The United

9

States Attorney is authorized to charge a juvenile who is sixteen or over as an adult for certain enumerated crimes, including murder . . . ."). Thus, presiding over his trial for an alleged violation of the D.C. Code, this Court can and will also treat Mr. Diaz-Antunuez as an adult.

Counsel for Mr. Diaz-Antunuez argued that Congress intended the FJDA to apply in all United States District Court proceedings as a jurisdictional prerequisite that the government must satisfy to prosecute a juvenile in federal court, even for violations of the D.C. Code. This argument has certain attractions because any federal judicial district outside the District of Columbia would have jurisdiction over a juvenile committing a crime at age sixteen— such as Mr. Diaz-Antunuez is charged—only if the government charged him with a federal offense and complied with the FJDA. But the District of Columbia is a non-state that is, at its legal foundation, a federal enclave. *Propert v. District of Columbia*, 948 F.2d 1327, 1330 n.5 (D.C. Cir. 1991) ("D.C. is a political entity created by the federal government . . . ." (*citing Bolling v. Sharpe*, 347 U.S. 497, 499 (1954)). The United States Attorney for the District of Columbia can choose to prosecute certain crimes in either local or federal court. And there is no ambiguity in either the FJDA or D.C. Code § 11-502(3). *See Carcieri v. Salazar*, 555 U.S. 379, 387 (2009) (holding that in interpreting a statute a court "must first determine whether the statutory text is plain and unambiguous" (citations omitted)). Because neither statute is ambiguous, the Court must give effect to each as they are written. *See Watt v. Alaska*, 451 U.S. 259, 267 (1981) ("We must read the statutes to give effect to each if we can do so while preserving their sense and purpose." (citations omitted)). The FJDA does not apply because Mr. Diaz-Antunuez is not charged with a federal crime. While that would exclude him from federal court in other states, that is not the case in the District of Columbia.

### B. Jurisdiction Is Proper Under D.C. Code § 11-502(3)

Having concluded that its jurisdiction over Mr. Diaz-Antunuez must rest on D.C. Code § 11-502(3), the Court turns to the next issue: whether such jurisdiction is proper.

#### 1. Legal Standard—Concurrent Jurisdiction

Under D.C. Code § 11-502(3) as interpreted by the D.C. Circuit, this Court has jurisdiction over any local offense *properly joined with a federal offense in a charging document under Federal Rule of Criminal Procedure 8(b) at some point prior to trial*, regardless of any disposition of any charges against any of the defendants prior to trial. D.C. Code § 11-502(3) provides that "[i]n addition to its jurisdiction as a United States district court . . . the United States District Court for the District of Columbia has jurisdiction of . . . [a]ny offense under any law applicable exclusively to the District of Columbia which offense is joined in the same information or indictment with any Federal offense." This Court has jurisdiction "over local offenses so long as an indictment properly joins federal and local offenses under Federal Rule of Criminal Procedure 8[b]." *United States v. Johnson*, 46 F.3d 1166, 1172 (D.C. Cir. 1995); *see also United States v. Jackson*, 562 F.2d 789, 793 (D.C. Cir. 1977) (observing that a contrary construction would mean that the district court would have jurisdiction "regardless of how unconnected or dissimilar those crimes might be").

As a legal principle applicable to this District of Columbia/federal court question, offenses under District of Columbia and federal law that are properly joined in a federal indictment establish jurisdiction in the district court so that subsequent disposition of the federal offense does not remove federal court jurisdiction. *United States v. Kember*, 648 F.2d 1354, 1359 (D.C. Cir. 1980); *see also United States v. Shepard*, 515 F.2d 1324, 1331 (D.C. Cir. 1975) ("[W]here federal and local offenses have been properly joined in one indictment and jeopardy has attached, the District Court may proceed to a determination of the local offenses regardless

11

of any intervening disposition of the federal counts.").[4]  When federal and local charges are not actually joined in the *same* charging document—even though they might have been—the district court lacks the power to adjudicate the local charges.  *United States v. Koritko*, 860 F.2d 738, 739 (D.C. Cir. 1989).  Further, when local charges have been "disassociated" from the federal offenses, a federal district court in the District of Columbia may, in its discretion, decline jurisdiction over the local charges.  *Kember*, 648 F.2d at 1359–60.

Accordingly, the analysis here must consider multiple issues.  There is no doubt that this Court has jurisdiction pursuant to D.C. Code § 11-502(3) if the D.C. Code charge against Mr. Diaz-Antunuez is properly joined in the federal Superseding Indictment under Rule 8(b).  If joinder was proper, the question becomes whether severance under Rule 14(a) is appropriate; if Mr. Diaz-Antunuez is severed, the Court may decline jurisdiction.

### 2. Legal Standard—Joinder Under Rule 8(b)

Joinder of defendants and offenses in multi-defendant cases is governed by Federal Rule of Criminal Procedure 8(b), which provides in part: "The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b); *United States v. Wilson*, 26 F.3d 142, 153 n.4 (D.C. Cir. 1994) ("In cases involving multiple defendants, the weight of authority in this circuit and elsewhere regards Rule 8(b) as providing the sole standard for determining the permissibility of joinder of offenses." (internal quotation marks omitted)); *see also Jackson*, 562 F.2d at 794 ("It is firmly established in the case law that the propriety of joinder in cases where there are multiple defendants must be

---

[4] This is analogous to supplemental jurisdiction over state-law claims in civil cases.  *See generally* 28 U.S.C. § 1367.

tested by Rule 8(b) alone and that Rule 8(a) has no application." (quoting 1 C. Wright, Federal Practice and Procedure § 144, at 318-19 (1969)).

While it is "difficult to prevail on a claim that there has been misjoinder under Rule 8(b), there are definite limits to what the government can put together in a single indictment." *United States v. Nicely*, 922 F.2d 850, 853 (D.C. Cir. 1991). Rule 8(b) "may not be read to embrace similar or even identical offenses, *unless* those offenses are related. . . . There must be a logical relationship between the acts or transactions within the series." *Id.* (citing *United States v. Perry*, 731 F.2d 985, 990 (D.C. Cir. 1984)). "Rule 8(b) can be satisfied either by the indictment alone, as 'for instance when a conspiracy charge links all the offenses and defendants,' or by 'subsequent pre-trial representations.'" *United States v. Spriggs*, 102 F.3d 1245, 1255 (D.C. Cir. 1996) (quoting *Perry*, 731 F.2d at 990); *see also United States v. Gbemisola*, 225 F.3d 753, 760 (D.C. Cir. 2000) (holding that joinder is proper, even in cases *without* a conspiracy count, when prosecutors "present evidence that [defendants'] offenses arose out of their participation in the same drug distribution scheme." (internal quotation marks omitted; alteration in original)).

Moreover, "[j]oint trials are favored in RICO cases," *United States v. Richardson*, 167 F.3d 621, 624 (D.C. Cir. 1999), and "an offense that is chargeable as a RICO predicate may be joined to an offense that is not chargeable as a RICO predicate so long as the two offenses satisfy this test of 'logical relationship,'" *United States v. Brown*, 823 F.2d 591, 598 (D.C. Cir. 1987) (quoting *Perry*, 731 F.2d at 990).

### 3. Joinder Was Proper

The "logical relationship" test is satisfied in this case because the murder with which Mr. Diaz-Antunuez is charged was allegedly an overt act committed on MS-13's behalf, in aid of the RICO conspiracy that underlies all other charges in the Superseding Indictment. *See*

13

*Nicely*, 922 F.2d at 853.  According to the Superseding Indictment, which the Court accepts as true for the purposes of the instant motion, Mr. Diaz-Antunuez and other MS-13 members killed Mr. Membreno-Zelaya "in accordance with the greenlight"—that is, an order to murder—issued by superior MS-13 members, including Mr. Gil-Bernardez and Mr. Rivera-Luna.  *See* Superseding Indictment ¶ 22(i), (j).  All charges in the Superseding Indictment relate to the alleged RICO conspiracy in which Mr. Rivera-Luna and Mr. Gil-Bernardez, among others, participated.  *See id.* ¶ 16.  Review of the Superseding Indictment confirms that "[a]ll of the charged offenses, local and federal, were . . . part of a common scheme or plan, which means that, for purposes of Rule 8(b), they were part of the same series of acts or transactions," and thus are properly joined.  *See United States v. Moore*, 651 F.3d 30, 69 (D.C. Cir. 2011).  While Mr. Diaz-Antunuez himself is not charged with RICO conspiracy, that absence is not relevant; Rule 8 requires that "the local offenses charged were [allegedly] committed as acts in furtherance of the charged conspiracy and/or as predicate acts in the charged RICO conspiracy," which applies here.  *See id.* (finding joinder proper under D.C. Code § 11-502(3) where indictment alleged, *inter alia*, RICO conspiracy and D.C. Code offenses, including murder).  Thus, Rule 8(b)'s requirement that offenses may only be joined if they involve the "same series of acts or transactions" is satisfied, and joinder is proper.

   Because Mr. Diaz-Antunuez was properly joined in the Superseding Indictment under Rule 8(b), the Court has jurisdiction over the D.C. Code offense with which he is charged.  *See Moore*, 651 F.3d at 69 ("Because . . . the superseding indictment establishes that joinder of the local offenses was proper, . . . the district court had jurisdiction under § 11–502(3)."); *see also United States v. Drew*, 5 F. Supp. 2d 16, 18 (D.D.C. 1998) (holding that jurisdiction was proper because charges were properly joined under Rule 8 where federal firearms charge was

14

joined with local protective order violations that were "intimately linked with, and culminated in" incident that led to federal charge).

### C. Severance Under Rule 14(a) Is Not Required

Although Mr. Diaz-Antunuez's Motion to Dismiss is not titled as a motion to sever, he joined in other Defendants' motions to sever, *see* Dkt. 283, and he had asserted severance arguments as part of an earlier motion that primarily addressed other issues, *see* Dkt. 172. At oral argument on the instant Motion to Dismiss, both parties made arguments concerning severance, which the Court invited and has considered.

Even when joinder of defendants and offenses is proper under Rule 8(b), Federal Rule of Criminal Procedure 14(a) permits a court to sever defendants or counts, or "provide any other relief that justice requires," if the joinder "appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a). The Supreme Court has instructed that "when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). The High Court suggested that such risk is "heightened" when, for example, "many defendants are tried together in a complex case and they have markedly different degrees of culpability," or when evidence "that would not be admissible if a defendant were tried alone is admitted against a codefendant." *Id.* The Supreme Court also suggested that such risk might be present when there is "[e]vidence that is probative of a defendant's guilt but technically admissible only against a codefendant" and when "a defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial." *Id.*

Accordingly, the D.C. Circuit has instructed that "[s]everance may be required . . . when the evidence against one defendant is far more damaging than the evidence against the other defendant[s]." *United States v. Halliman*, 923 F.2d 873, 884 (D.C. Cir. 1991) (internal quotation marks omitted); *see also Richardson*, 167 F.3d at 624. "The few cases in which [the D.C. Circuit has] overturned a trial court's denial of a motion to sever have involved clear disparities between the weight, quantity, or type of the evidence against the movant and against the other defendants." *Halliman*, 923 F.2d at 884. The critical question is "whether a jury could reasonably compartmentalize the evidence introduced against each individual defendant." *Id.* The trial court "has a continuing duty at all stages of the trial to grant a severance if prejudice does appear." *Schaffer v. United States*, 362 U.S. 511, 516 (1960); *Perry*, 731 F.2d at 992. In many trials, however, measures less drastic than severance, such as limiting instructions, often suffice to cure any risk of prejudice. *Zafiro*, 506 U.S. at 539.

Mr. Diaz-Antunuez contends that Mr. Gil-Bernardez's plea and absence from the upcoming trial destroy any "link" between the D.C. Code charge against Mr. Diaz-Antunuez and the Superseding Indictment. Def. Mot. at 11. He argues that he is charged with an isolated offense that bears no real connection to the far-reaching gang activities with which Messrs. Machado-Erazo and Martinez-Amaya are charged. *Id.*; *see also* Reply at 10 ("[G]iven the absence of Gil-Bernardez and Rivera-Luna, it would be inappropriate for [the government] to argue that the murder was an overt act of the conspiracy at trial when Mr. Antunuez is charged solely with a local offense."). Moreover, because he is charged with committing an offense at age sixteen, Mr. Diaz-Antunuez asserts that "the District of Columbia has a unique interest in prosecuting" and that the Superior Court is "especially suited to render a judgment or adjudicate delinquency in such" a case. Def. Mot. at 12.

16

The government asserts that the Court should retain jurisdiction over the first-degree murder charge because "the Brujo [Membreno-Zelaya] murder is one of the overt acts of the RICO conspiracy" as to which the government intends to present evidence at trial. Opp. at 6. According to the government, the offense with which Mr. Diaz-Antunuez is charged "shows the enterprise at its core—a green light authorized by MS-13 members in El Salvador and then carried out by several MS-13 members [in the United States]." *Id.* In addition, according to the government, "severing [Mr. Diaz-Antunuez] from the case at this point would serve no useful purpose" and would only delay Mr. Diaz-Antunuez's trial. *Id.* at 7.

As the record stands, the danger of prejudice is more diaphanous than real. As indicated, Mr. Diaz-Antunuez would be treated as an adult in either Superior Court or in this Court under D.C. Code § 16-2301(3)(A)(i). Therefore, deferring to the juvenile expertise of the D.C. Superior Court's Family Division is not an option. Moreover, there is no "serious risk" of Mr. Diaz-Antunuez being unfairly prejudiced by a joint trial with Messrs. Machado-Erazo and Mr. Martinez-Amaya. *See Zafiro*, 506 U.S. at 539. He has made no proffer of mutually antagonistic defenses or *Bruton* problems.[5] During the March 13, 2013 hearing, the government proffered that it will show at trial that the murder of Mr. Membreno-Zelaya was not a detached event, unrelated to the offenses with which the co-defendants are charged. Rather, the government proffered evidence that it contends will show that Mr. Diaz-Antunuez was involved in MS-13 beyond the alleged murder and that he was not merely a neophyte or applicant to the gang. The proffer significantly lessens the danger to Mr. Diaz-Antunuez of unfair prejudice from evidence of the gang activities. Furthermore, to the extent unfair prejudice arises—and the Court reiterates that none has been shown to date—the Court can and will instruct the jury to

---

[5] *See Bruton v. United States*, 391 U.S. 123 (1968).

distinguish those charges against Messrs. Machado-Erazo and Martinez-Amaya from the single charge against Mr. Diaz-Antunuez. Because the former arise under federal law and the latter only under D.C. law, jury instructions and the verdict form will make the differences plain. *See Zafiro*, 506 U.S. at 539; *see also United States v. Wilson*, 605 F.3d 985, 1017 (D.C. Cir. 2010) (quoting *Zafiro* and discussing limits on examinations and limiting instructions as preferable options to severance).

The Court concludes that no showing requiring severance has been made at this time.

### D.  The Court Will Not Relinquish Jurisdiction

It is clear that a federal district court in the District of Columbia lacks jurisdiction despite D.C. Code § 11-502(3) when joinder was faulty initially, *e.g.*, *Jackson*, 562 F.2d at 794–95, and that a district court "should decline to try local offenses when those offenses have been disassociated from any federal charges prior to trial and retention of the case would not comport with the responsibilities of the District Court with respect to matters of federal concern." *Kember*, 648 F.2d at 1359–60 (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); other citation and quotation marks omitted). The latter circumstance raises a "matter of sound exercise of the court's discretion, not a question of its power." *Id.*

Because the murder of Mr. Membreno-Zelaya is alleged to be an overt act of the alleged RICO conspiracy, there is a definite connection between that murder, charged in Count 28, and the RICO conspiracy, charged in Count 1. That connection demonstrates that there are "matters of federal concern," *see Kember*, 648 F.2d at 1359–60, associated with the murder, even though it is charged against Mr. Diaz-Antunuez under the D.C. Code. Even without the continued prosecution of Mr. Gil-Bernardez, it would therefore be inappropriate for the Court to relinquish jurisdiction over the D.C. Code charge. The Court also notes that the charges were

properly joined under Rule 8(b) and that the D.C. Code expressly empowers the federal district court to try the charge against Mr. Diaz-Antunuez. Additionally, it is appropriate to retain jurisdiction over a case with which the Court has become intimately familiar. Trial of Mr. Diaz-Antunuez in Superior Court would necessitate a further lengthy delay. There is nothing to be gained, and justice would not be served, if this case were dismissed from federal court after all this time and on the eve of trial. *See, e.g.*, *United States v. Montgomery*, 815 F. Supp. 7, 11–12 (D.D.C. 1993) (exercising discretion to retain jurisdiction over local charges when federal charges dismissed as violation of Commerce Clause on "eve of trial" due to preparation invested); *United States v. Edmond*, 738 F. Supp. 572, 575, 579 (D.D.C. 1990) (exercising discretion to retain jurisdiction over local charges scheduled for second trial following dismissal of federal charges on double jeopardy grounds after first trial "in view of the substantial time and resources" it had invested in the case and the delay that would result if defendants had to be tried in Superior Court). Finally, as indicated, Mr. Diaz-Antunuez faces no greater sentence as a D.C. Code defendant in federal court than he would face in Superior Court; if Mr. Diaz-Antunuez is convicted, this Court will apply the D.C. Voluntary Sentencing Guidelines, not the federal guidelines. *See United States v. Cutchin*, 956 F.2d 1216, 1219 (D.C. Cir. 1992) ("It suffices to say . . . that the [United States] Sentencing Guidelines apply only to federal crimes under 18 U.S.C. § 3551(a). Defendants found guilty of violations of the D.C. Code can only be sentenced under the D.C. Code.").

## IV.  CONCLUSION

The Federal Juvenile Delinquency Act does not apply to this case because Mr. Diaz-Antunuez is charged only with a non-federal offense under the D.C. Code. This Court has jurisdiction over the first-degree murder while armed charge because it was properly joined to

Case 1:10-cr-00256-RMC   Document 309   Filed 03/15/13   Page 20 of 20

the Superseding Indictment, and severance is not required. The Court thus confirms its order issued from the bench on March 12, 2013.

DATE: March 15, 2013

                                                  /s/
                                      ROSEMARY M. COLLYER
                                      United States District Judge